Alright, we'll call the next case, Cardionet vs. Cigna Health Corporation. Good morning, Your Honors, I'm Mark Gallant with Cousin O'Connor, I'm joined by my partner Aaron Krause, and we represent the Appellant, Cardionet, and Life Launch. We brought two sets of, if you will, two sets of claims in our complaint. The plaintiffs in this case are manufacturers of equipment, they sell a variety of services which are covered by a variety of insurance companies. We brought two types of claims. One set of claims are all derivative claims, it's the first four counts, and those are claims that were brought solely by virtue of our having obtained assignments from patients to challenge the denial of coverage of the technology. We also brought three counts that, if you will, are tort or statutory tort claims for at statements made in a publication that Cigna issued to physicians with whom our clients do business in which we believe we're disparaging about the product and have had an impact on our business overall. Judge Rubino, to our surprise, found that all of these claims were arbitrable and he dismissed all of these claims and closed the case on the basis that the claims were arbitrable. And respectfully, it's our position that not any of these claims are subject to arbitration. And that's for a host of reasons. First of all, there's the arbitration clause itself. This is a case where there's an alternative dispute resolution provision. There's two sections that interrelate to one another. Those provisions make clear that the subject of the arbitration clause are disputes between the parties regarding the performance or interpretation of the contract. The word dispute is used five different times, four times the context. It's absolutely clear that it refers to a claim for breach of the contract, which is we cite case law that supports that a performance issue or interpretation issue is a breach of contract issue. None of our claims allege that there's been a breach of the contract. None of our claims allege that Cigna has misinterpreted the contract. Quite to the contrary, under the and our position that the arbitration clause focuses on disputes that involve a breach of the contract, in fact, is the same position that Cigna took simultaneously in a different case in Connecticut where they wanted to bring a claim under ERISA. And this was in the Connecticut General Houston case. They went on record and told the court that there's just no doubt that this clause is a narrow clause that's constrained to disputes that involve breach of contract cases, doesn't reach tort cases, doesn't reach ERISA cases. Why don't your claims arise out of the agreement as opposed to out of the performance and the interpretation of the agreement? I'm sorry, Your Honor. Why don't your claims arise out of the agreement as opposed to the performance of the agreement? Because our claims are not...  Right. And saying that, therefore, you would only be subject to a breach of contract arbitration provision. We're not alleging that they breached the contract in any way. As masters of the complaint, we don't see a contract breach here. In order to bring this case and to have standing to bring this case on what I will call the central issue, which is their coverage policy, the coverage is determined under employee benefit plans. If you look at our contract, it has a defined term in it which talks about coverage. Can we go back a second? Sure. Why shouldn't you go to arbitration? Because the claims, the principal claims we're bringing are Section 502 coverage claims under ERISA. They involve whether or not the claims that we... We're talking about your tort claims and the... Well, I'm talking first about the derivative claims. If you want me to focus on the tort claims. The tort claims are not subject to arbitration because they have nothing to do with the contract. We would bring the same claims about the statements about the technology that we make in conjunction with other companies, whether we were a contract provider or not a contract provider. After five years of covering the product, these technologies, recognizing that they were medically important and significant, Cigna had a change of heart and issued a policy saying they will never cover the technology because it's experimental and unproven. And they issued that statement in a bulletin that went to hundreds of thousands of physicians. The tort or the tort-like claims that are aimed at that dissemination of that statement don't arise under the contract. There's no provision of the contract that deals with what they may or may not say about the product. The harm that we face from those tort claims are not about any interpretation of any term of the contract. And we don't point to any provision of the contract that we say has been transgressed as a result of those statements. What's the underlying basis of those direct claims? The underlying basis of the direct claims is that Cigna in the bulletin told hundreds of thousands of physicians that mobile cardiac telemetry services were experimental and unproven services. And that's the basis for that claim. So it wasn't a statement that Cigna made that CardioNet was bad guys. They talked about the services themselves, which were part of the provider agreement. They talked about services which are covered by the, for which we get paid under the provider agreement. Correct. But the claim does not allege that they breached the provider agreement in making those statements. They can say whatever they want. And to the extent that they make a disparaging statement, that claim doesn't arise under the contract. It either arises under the Lanham Act or it's a claim sounding in tort, which under Pennsylvania law is a very disparate claim from one that sounds in contract. And the operative facts are different. There's no, when we focus, for example, on the disparagement claims, the operative facts in resolving that claim are, excuse me for saying, what was said about the product, what's the truth or the falsity of the claim, were we harmed, would a reasonable person take that claim as a disparagement. None of those facts are facts that would overlap with a claim for breach of contract. So under the... Don't the claims have their origin in the agreement itself? The case law that we cited... If you didn't have an agreement with Cigna, you probably would not be making the claim. Well, I don't, respectfully, I don't think that's so. As far as the disparagement claims are concerned, products are sold to, or provided to patients and they're covered by insurers, whether you're in network or out of network. So regardless of whether we had a contract with Cigna, if there's a statement made to that our product is considered unproven and experimental, we're harmed by that. It has nothing to do with the contract. And under the factual underpinnings test, which is mentioned by this court, I think, in the Medtronic case, the issue really is, are the facts that you're... Are you changing the labels on a legal claim, which amounts to pretty much a breach of contract claim? So if we were alleging that somebody defrauded us by intentionally violating the contract, there would be a factual overlap. When you're alleging somebody disparages your product in a bulletin, there's no overlap between that and any claim that the contract is breached. You do allege, though, don't you, that there was a failure to perform, at least to some extent, in that some of the participants still have under their benefit plans coverage for your services, but Cigna failed to pay those as part of this overall change in their designation of your services? Yes, which is why the, what I'll call our core claims, the derivative claims, are not our claims. They're assigned claims. But even when you get to pleading your direct claims, the five through seven, don't you talk about the fact that there are some participants that are not allowed, are not getting their insurance? No, those claims are not reimbursement claims. They're claims saying we've lost business because the product has been disparaged to the doctors that order the diagnostic services. But I would really like to focus, if I could, principally on the derivative claims, because that's the paramount claim as far as we are concerned. Let me help you focus on the derivative claims a second. If the direct claims aren't covered by the agreement, and you're saying the derivative claims aren't covered by the agreement, which claims were covered by the agreement? None of these claims were covered by the agreement. That's the point. What was the agreement for? The agreement is to set a rate of payment and terms under which they pay us for services that we provide that are covered services. Your covered services are all for somebody else, for a participant in some plan. If we provided them with, say, a halter monitor, and they paid us, we claim we were owed $100 versus $90, that would be a dispute under the contract, a payment dispute. This court in PASCAC has pointed out that the difference between a derivative claim under, and I see my time is up. Time is running quickly, but to answer Judge Fischer's question, but I would also like you to just focus a minute or so on why the derivative claims should not be subject to arbitration. Well, the derivative claims. Judge Fischer's question. Yeah. Sorry. I have a head cold, and I got a little bit derailed here, Your Honor. Could you repeat that? The question is, make it simple. I said which cases would be covered by the agreement, but so, too, the question is why aren't the derivative claims so covered? Well, the vast majority of disputes between a provider and a plan would be covered under the agreement. Those disputes involve the timing of payment, the amount of payment, whether or not utilization review has been done in accordance with the contract. The majority of disputes between insurers and plans tend to be arbitrable claims under the agreement. A derivative claim, in this case, is not our ox, if you will, that's being gored. It's the patient's. The patient's will now owe us the money for these services because Cigna has said they're not covered. They're saying these are the equivalent of cosmetic surgery. They're not covered by our insurance policy. When you say owe you money, you mean for past services or for future services? The claims that we're bringing on behalf of the beneficiaries include monies that would be owed for past services that they've consumed, but for which Cigna has refused to reimburse the service. So it's a reimbursement claim? It's past reimbursement and it's prospective claim on behalf of the beneficiaries seeking to have Cigna apply their ERISA plan language rather than ERISA's corporate policy to determine coverage. In other words, you're not seeking to compel Cigna to provide this service that they discontinued? Yes. We're seeking to, under 502A of ERISA, we're seeking to have them. The one that they have said is experimental, it's unproven. You want, you're trying to compel them to reinstate that plan? Right. In the name of the beneficiaries, just as the service is covered for 150 million people by Medicare, by Aetna, by most other insurers, these are claims by the beneficiary saying, wait a second, you've done an about-face, we're cardiac patients, the doctor has prescribed this technology, it's widely used, you've suddenly declared it experimental, and now we're stuck for the bill. Do the plaintiffs have a right to bring that same claim under ERISA against Cigna? Cigna's counsel conceded that they could bring that claim, and we have an assignment from the patients that enables us to stand in their shoes. As Your Honor recognized in the Medtronic case, we are proceeding in the shoes of the beneficiaries that assigned us those claims. And those claims could not be brought under the contract, because the claims fundamentally seek a declaration of and coverage of services under health benefit plans. We as a provider have no standing to bring that claim. That's a claim by the patient saying, you, Cigna, have denied coverage for my service. I'm now going to owe CardioNet and LifeWatch the money for that service. I've been denied coverage under ERISA, and since this Court's decision in PASCAC, it's been widely accepted in this jurisdiction that a provider has standing with a proper assignment to bring a coverage claim on behalf of a beneficiary. We'll get you back on rebuttal, Mr. Hale. Okay. Thank you, Your Honor. Mr. Hammer? Good morning. Paul Hammer from Saul Ewing for Cigna. Your Honor, I'd like to start with the first question you asked, which is, why shouldn't these claims be arbitrated? And it's obviously our view that Judge Rubino was correct, that all of these claims are subject to arbitration. The plaintiffs in this case, Your Honor, are two in-network medical providers in the Cigna network. And that means when you're an in-network medical provider, you have a contract with Cigna that defines your relationship not only with Cigna, but also with persons who are participants in health plans administered by Cigna. But you don't dispute that the plaintiffs, as I nor as I could use that phrase, had a right to bring their own claim against Cigna. The very claims, in other words, that CardioNet is bringing could have been brought by these SINRs. They could have been. Well, if they could have brought those claims, why could they not assign those claims? They can assign those claims. But not... What is your argument? But not to CardioNet? No. What Judge Rubino said is, CardioNet and in the contract between CardioNet and Cigna, there is an arbitration clause. And the only thing Judge Rubino said is, claims that are within the scope of that arbitration clause that the plaintiffs are bringing have to be arbitrated, whether they are assigned claims or direct claims, as long as they are within the scope. If a plan participant brought his or her own suit, they would not be parties to the in-network medical contract. I understand that point, but I still don't understand. And if I have a claim that I can bring, and I can't afford counsel, I can't afford a lawyer, I can't take the time, why can't I assign it to someone else? It has been assigned to CardioNet. But I cannot assign it to CardioNet because CardioNet has an agreement with Cigna. Is that your argument? Well, actually, CardioNet characterizes its contract with Cigna as an assignment of the plaintiff's rights to payment. That's what they say in the complaint. But I think, and that's, Your Honor, in paragraphs 94 and 136 of the complaint. There's nothing in the provider agreement that speaks to whether a provider is going to have to arbitrate claims it receives by assignment, is there? Well, what the arbitration clause says is that the provider will arbitrate disputes it has with Cigna about the performance or interpretation of the contract. And at the heart of these contracts is the concept of what is or is not a covered service. Right. But it doesn't speak to claims that it's bringing by assignment or standing in the shoes of somebody else. I think it speaks to any claim that the provider is bringing if it's within the scope. And so I guess the question, Your Honor, is whether a claim that the provider has received by assignment is automatically outside the scope of the arbitration clause or not. Judge Rubino's conclusion, which I think is correct and which is consistent with the conclusions reached by a variety of other district courts, is that medical providers in the position of these plaintiffs who are in effect challenging a benefit determination are subject to the arbitration clause of their agreements with the medical payor, Cigna, even though if a planned participant brought that claim himself, that planned participant would not be under a similar limitation. And neither you nor Judge Rubino cite anything other than other district courts for that proposition. I don't believe, I'm not aware of an appellate court having addressed that. I think it is a fairly straightforward application of Is there something that's common or is there a fundamental rationale for that? For that decision? Yes. Your Honor, I think what the courts in each instance have looked at is that the claims that are at issue, the claims that are being pursued by the provider, go to the heart of the contract that is between the provider and the insurer. But how is that so? They're merely accepting by assignment claims of other people, plaintiffs who could bring independent, individual claims themselves. They're seeking payment for services they provided. That's what they're seeking. That's the express remedy requested in this complaint. Let's suppose instead of CardioNet getting the assignments and bringing the claim to Cigna, all of these participants assigned their rights to Cozen O'Connor. And Cozen O'Connor brought a claim against Cigna. It seems to me that what your argument has been in your briefs at least is that that would not be subject to arbitration. That's correct, Your Honor. I mean, the critical Isn't that a bit odd? I don't think so, Your Honor. The point is that the person to whom the claims were assigned is subject to a preexisting legal obligation to arbitrate disputes of this type with Cigna. And if you assign a claim to a person who is subject to that preexisting legal obligation, you don't nullify that obligation. So the case is that these plaintiffs could have assigned their cases to just about anybody, just don't assign it to Cigna. CardioNet? Your Honor, the only issue that we're talking about here is not whether the claims can be pursued. It's in what form they're pursued. But it is correct. But I guess your answer to the question is yes. And in other words, they can assign them to any lawyer, any law firm, any entity, anyone that they want to assign those claims to, and those claims can be presented. But if you, as long as, but you cannot assign those claims to CardioNet because CardioNet has a preexisting agreement to arbitrate with Cigna. You cannot pursue the assigned claims in federal court. You can certainly assign your claims to CardioNet and they can pursue them. It's just that they pursue them in arbitration because that's what they agreed to do. Couldn't you have protected yourself from this situation by having a provision in the provider agreement that makes it clear it's disputes between the parties as well as disputes that may be assigned? Your Honor, if that language had been there, I doubt we would be here today. But our view is that the arbitration clause is broad enough. The point is that the party that agreed to arbitrate is the party that brought the suit. But let's go, I mean, 6.3 says disputes that might arise between the parties. Why should we even view this as a dispute between the parties? Because that's what CardioNet, CardioNet is the plaintiff. And CardioNet is the party that is bringing the dispute. And CardioNet is seeking payment to itself. That's what it's, it doesn't seek payment to plan beneficiaries. It seeks payment to itself pursuant to the rate in the contract. That's the express prayer for relief in counts one and four. That's the overall thrust of what CardioNet's, all of CardioNet's claims. It's both its assigned claims and its so-called direct claims. All challenge, essentially, the determination that these are not covered services. If these are covered services. Talking about the public policy of we want to promote the assignability from patients to providers of claims so that it, I guess, makes it more likely patients will get services without having their financial, you know, status considered before getting treatment. Is that a relevant public policy as we analyze the sustainability of these derivative claims? Well, it's a relevant policy. It's not relevant to this dispute. Because the, the ability of a participant to assign his or her claims to the medical provider is not in any sense impaired. The only thing we're talking about is whether the provider brings those claims in an arbitration, if it has agreed to do so, or in a lawsuit if it has not. And in this case, CardioNet, well aware of the arbitration provisions in its contract with Cigna, accepted the assignment. And, and has, it is, in Judge Rubino's view, and I think correctly so, the, the focus is not on the planned participants. They are not in any sense injured or limited by Judge Rubino's decision. The only issue that Judge Rubino's decision addresses is in what forum CardioNet pursues its claims. And under very sort of vanilla principles of jurisprudence regarding the enforcement of arbitration provisions, Judge Rubino found that both the direct claims and the assigned claims, because they were so integrally related to the contract between Cigna and CardioNet, were properly subject to arbitration. Going back to Judge Stark's point, is, isn't there something to be said about having or, or taking advantage of the expertise of CardioNet with these kinds of, of claims and, and the technical information that they have to present these claims for the plaintiffs, as opposed to the, the individual plaintiffs having to get lawyers and, and not having the financial resources to present their own claims individually? Your Honor, I, I, none of that is affected by the question that, by the decision that Judge Rubino made. The only, Judge Rubino didn't say. Well, it is in a way, isn't it? Because what he is saying is you individual plaintiffs, you've got, if you want to present these claims, you have to just go out and present them on your own. In no sense are we saying that. Or he can get somebody else. Or they can assign them to some other entity.  And pursue the claims in the forum to which they agreed.  In arbitration. Yes, I, I mean, I think the policy that you are addressing is whether the plaint, the plaintiff participants are somehow being limited or negatively impacted. What I'm suggesting is that the only thing that the court has done is address the question of the forum in which those claims are presented. And it has done that pursuant to another public policy. Well enshrined in federal law, which is enforcement of arbitration provisions. And the presumption of arbitrability when there is a, a, an undisputed agreement between the parties to arbitrate disputes. Mr. Chalmer, let me ask you this. In October, in 2012, in October, you changed your policy on reimbursement of these O, OCT services, correct? That's correct, yeah. Okay. And at least as to the assignments that I'm looking at here, all of them seem to have been signed by the participants assigning their rights to CardioNet in December of 2012. Is the dispute in the claims that are the derivative claims over the coverage of the services themselves? That's how the plaintiffs characterize them. In their brief, your honor, the plaintiffs actually say that they are seeking coverage, i.e. payment. Okay, so they're seeking, they're seeking payment and coverage. But at the point for which they're seeking payment, it's after the period of time in which Cigna said, we're no longer going to reimburse those services as covered. Correct, that's correct, your honor. So if an arbiter says, you're right, then these claims aren't reimbursable. And CardioNet provided these services to the assignors. They're going to be on the hook to CardioNet without having an opportunity to come to a court to see whether or not your interpretation was correct. Well, your honor, I would say two things. Whether or not they're actually liable to CardioNet is governed by the facts of each claim. There are provisions in the contract between CardioNet and Cigna that address when and under what circumstances CardioNet may recover from planned participants amounts billed for services that are deemed, for example, not medically necessary. We don't know the circumstances of each claim. But what I would say more broadly is, having assigned claims, the planned participants, whether the claims are brought in federal court or in arbitration, the planned participants are not going to be part of the proceedings where the issue of coverage is addressed. That's the same in either proceeding. I have a question about the direct claim. Yes. So the argument is that what is essentially the factual underpinnings there is the effect of disparagement when you all decided that the OCT services are now EIU, whereas they hadn't been before, and that that has consequences for CardioNet, wholly independent of its contractual relationship with Cigna. Address that argument. Yes, your honor, the factual averment is that Cigna disseminated a coverage statement to its physicians, or physicians in its network, that essentially said, we consider services of this type EIU and not covered under plans that do not provide for payment for EIU services. That's what they said. That's pursuant, essentially, to the provisions of its contracts with all its medical network providers, that they know what's covered and what's not covered. And so the underlying facts for both the assigned claim and for the so-called direct claims are really just the change in coverage position and the communication of the change in coverage position. Hypothetically, if notwithstanding that change in designation as to whether it's EIU or not, if you continue to pay those claims for the services, for whatever reason, the plaintiff would still have all of its same allegations against you, wouldn't it? Well, it would argue, I think the issue here is, would they have a claim as opposed to whether it's within the scope of the arbitration clause? They can have a claim whether the services are paid or not. The arbitration clause extends to the interpretation or performance of the contract. The core of the contract is what is or is not a covered service. That's what drives all of the parties' relationship with each other. And that interpretation is what's at issue here. What's a covered service, it goes back to what's in the participant benefit plan, doesn't it? That's by virtue of the definition in the agreement between Cigna and CardioNet. In other words, that's where the definition is. And so, yes, it does direct you to look at two things. So then there's no need to interpret the provider agreement to determine what's a covered service, is there? It is pursuant to the definition in the provider agreement that the term covered service exists. And while it's with reference to these other things, it is, in essence, that's the contract that controls. Thank you, Mr. Hammer. Thank you, Your Honor. Mr. Gallant. The direct claims don't arise under the provider agreement. They're coverage claims. As Judge Fischer, I think, recognized in a case called Scheibler v. Highmark. If a case goes to whether a benefit is covered under a plan, it can only be brought under Section 502A of ERISA. You can't frame it as a common law claim. So what we did here is not some sort of chicanery. It's basically following the dictates of the court decisions and bringing the coverage claims in the only way we could, which is by assignments. As noted, Cigna has itself taken the position that the arbitration clause deals with issues that are performance or interpretation of contract. They went on record and told the Connecticut court, which, by the way, was furious because they were taking positions that were internally inconsistent, depending on which case they were in. But the contract in this case is Section 1.6 of the provider agreement. The only contract provision that relates to coverage says that covered service is one which is covered under the terms and conditions of the participant's health plan. So the terms and conditions that would be subject to interpretation are not in this contract. This contract doesn't incorporate ERISA plans. That issue is determined external to our contract. That's a matter that's decided under a benefit plan, not under this contract. And we have no right to tell Cigna what, for example, for the United Auto Workers, what services it chooses to cover or not cover. The only reason we're in court today, or had been in court, is because we have assignments, copies of which Judge Rubino wanted to see, and which are in the record, and which are signed documents by plan participants saying I hereby acknowledge my financial responsibility if this isn't covered, and I also assign to you the right to pursue claims to get this covered, including specifically rights under ERISA. An arbitrator, by the way, wouldn't even have authority to grant prospective relief against ignoring policies. One of the allegations we've made is that Cigna applies this coverage policy, wrote automatically by computer to immediately deny these claims without looking at the plan language. That claim, relief to insist on adherence to a plan, I think it's under 502c of ERISA, is exclusively federal jurisdiction. Could you crystallize that for me a little bit more? I thought you said that the relief that the individual plaintiffs can get differ whether they are bought individually in a legal action or whether they go through arbitration, is that accurate? Yeah, the relief we seek is- Do they get more relief? We're seeking two forms of relief. Excuse me, do they get more relief or less relief if they proceed in a legal action as opposed to arbitration? Yes, there's more relief available because to compel Cigna to actually honor plan terms on an ongoing basis is under ERISA under section 502c, is a matter of exclusive federal jurisdiction. Arbitrator can't enjoin Cigna to honor plan terms. Congress made that the exclusive province of the federal court. So not only would the arbitrator not render this, decide these issues, the arbitrator couldn't decide these issues. As you say, you allege they have a uniform policy of denying all of these claims now, even without regard to what's in the participant plan. Without regard to what's in the plan language, and that's information belief based on experience. And so why isn't that a breach of contract allegation with respect, at least to the participants who are not in the Cigna plan? Because the core of that allegation is that there are varying terms in different ERISA plans and different insurance contracts, some of which may just say we'll cover services that are approved by the FDA and are not used in a clinical experiment. In which case, they would have to cover these services. But then they've declared them in the bulletin to be experimental, investigational, and unproven. And as a result of that, applying that policy, they're never covered any time. So one of our allegations is that ERISA plan terms are being dishonored by Cigna. Because Cigna's applying a corporate no coverage policy, in which we believe they have a financial stake, to routinely deny services and not even look at the terms of the plan. That relief is to enforce ERISA plans, it's certainly not to enforce our contract. There were other bases for the motion to dismiss that the court didn't reach. If we were to remand, you would still have to confront those. And we confronted those in our opposition papers and we're delighted to do so. Yeah, the court did not reach, for example, whether we failed to state a claim under the Lanham Act and a variety of other claims, which were really not the thrust of the opposition by Cigna. Mr. Golan, thank you very much. Thank you, Your Honors. Thank you, Mr. Harmer as well, we'll take the case into advisement.